T.C. Memo. 2013-17

UNITED STATES TAX COURT

LUCY BEGAY, Petitioner <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket No. 8933-11.                     Filed January 16, 2013.

<u>Edward M. Dobson</u>, for petitioner.

<u>Miles B. Fuller</u>, for respondent.

MEMORANDUM OPINION

COHEN, <u>Judge</u>:  Respondent determined a deficiency of $4,057 in

petitioner's Federal income tax for 2009.  Unless otherwise indicated, all section

references are to the Internal Revenue Code in effect for the year in issue, and all

Rule references are to the Tax Court Rules of Practice and Procedure.

**[\*2]**   The issues for decision are:  (1) whether the relationship classification set forth in section 152(c)(2) violates petitioner's right to free exercise of religion under the First Amendment to the Constitution and (2) whether the relationship classification set forth in section 152(c)(2) violates petitioner's equal protection rights under the Fifth and Fourteenth Amendments to the Constitution.

## Background

This case was submitted fully stipulated under Rule 122.  The stipulated facts are incorporated as our findings by this reference.  Petitioner is a tribal elder of the Navajo Indian Nation.  Petitioner lived in Arizona at the time the petition was filed.

Petitioner filed a Form 1040A, U.S. Individual Income Tax Return, for 2009. Petitioner claimed a dependency exemption deduction for TD, head of household filing status, the earned income credit, and the child tax credit.  Petitioner identified TD as her nephew on her 2009 Federal income tax return.  The Court refers to minor children by only their initials.  See Rule 27(a)(3).

TD is a member of the Navajo Indian Nation and is a clan relative of petitioner.  In the Navajo Indian Nation, a clan relative is another member of the Navajo Indian Nation and certain clan obligations exist between clan relatives. Petitioner supports TD as a result of her clan obligation.  TD is not a child of

[*3] petitioner or a descendant of such child as described in section 152(c)(2)(A). TD is not a brother, sister, stepbrother, or stepsister of petitioner or a descendant of any such relative as described in section 152(c)(2)(B). With respect to TD, petitioner met the requirements set forth in section 152(c)(1)(B), (C), (D), and (E).

In the notice of deficiency respondent disallowed petitioner's dependency exemption deduction, head of household filing status, earned income credit, and child tax credit.

## Discussion

The Internal Revenue Code allows as a deduction an exemption for each dependent of a taxpayer in computing taxable income. Sec. 151(c). Section 152(a) defines a dependent as a qualifying child or a qualifying relative of the taxpayer. In addition to other requirements, a qualifying child must be the taxpayer's child, brother, sister, stepbrother, stepsister, or a descendant of any such relative. Sec. 152(c)(2). A qualifying relative, however, may be an individual who, for the year in issue, has the same principal place of abode as the taxpayer and is a member of the taxpayer's household and for whom the taxpayer provides over one-half of the support. Sec. 152(d)(1)(C), (2)(H).

Petitioner concedes that her relationship to TD does not satisfy the relationships set forth in section 152(c)(2) in order for TD to be considered

**[*4]** petitioner's "qualifying child".  Similarly, TD does not satisfy the relationships set forth in section 152(f)(1)(A)(ii) and (C) to be considered petitioner's eligible foster child.  An eligible foster child is an individual who is placed with the taxpayer by an authorized placement agency or by judgment, decree, or other order of any court of competent jurisdiction.  Sec. 152(f)(1)(A)(i), (C).

Taxpayers who have a qualifying child may claim a number of tax benefits such as head of household filing status, the earned income credit, and the child tax credit.  See secs. 2(b), 32(c)(1)(A)(i), (3)(A), 24(a), (c)(1).  Taxpayers who have a qualifying child or a qualifying relative may claim a dependency exemption deduction.  See sec. 151(a), (c).

Respondent now concedes that TD met the requirements as petitioner's dependent qualifying relative under section 152(d)(1)(C) and (2)(H), and petitioner is entitled to a dependency exemption deduction.

Although petitioner concedes that TD is not her qualifying child under section 152(c)(2), she argues that the exclusion from the section 152(c)(2) relationships of certain obligatory clan-based relationships in Navajo culture violates her constitutional rights under both the Free Exercise Clause of the First Amendment to the Constitution and the Fifth and Fourteenth Amendments to the

[*5] Constitution. According to petitioner, in Navajo culture and tradition children are not only children of the parents; they are also children of the clan. Petitioner submits that a Navajo clan consists of the first clans of the child's mother, father, maternal grandfather, and paternal grandfather and that the clan relationship may extend beyond the foregoing if, for example, the child is adopted.

Free Exercise Clause of the First Amendment

The First Amendment to the Constitution provides that "Congress shall make no law respecting an establishment of religion, or prohibiting the free exercise thereof".

The test to determine the constitutionality of a statute that is challenged as violating the Free Exercise Clause of the First Amendment is set forth in the Religious Freedom Restoration Act of 1993 (RFRA), Pub. L. No. 103-141, 107 Stat. 1488. The first of RFRA's two stated purposes is "to restore the compelling interest test as set forth in Sherbert v. Verner, 374 U.S. 398 (1963) and Wisconsin v. Yoder, 406 U.S. 205 (1972)". Id. sec. 2, 107 Stat. at 1488. The compelling interest test as set forth in Sherbert and Yoder means that "[g]overnment may substantially burden a person's exercise of religion only if it demonstrates that application of the burden to the person is in furtherance of a compelling governmental interest; and is the least restrictive means of furthering that

**[\*6]** compelling governmental interest." Id. sec. 3, 107 Stat. at 1488. The second of RFRA's two stated purposes is "to provide a claim or defense to persons whose religious exercise is substantially burdened by government". Id. sec. 2. "A person whose religious exercise has been burdened in violation of * * * [RFRA] may assert that violation as a claim or defense in a judicial proceeding and obtain appropriate relief against a government." Id. sec. 3.

Petitioner argues that the failure of the section 152(c)(2) relationship classification to recognize TD as her qualifying child unreasonably burdens her religious rights. Respondent does not challenge either the existence of petitioner's clan relationships and obligations or that such obligations to clan relatives stem from the Navajo religion.

Where the Government conditions receipt of an important benefit upon conduct proscribed by a religious faith, or where it denies such a benefit because of conduct mandated by religious belief, thereby putting substantial pressure on an adherent to modify behavior and to violate beliefs, a burden upon religion exists. Thomas v. Review Bd. of Ind. Emp't Sec. Div., 450 U.S. 707, 718 (1981). "While the compulsion may be indirect, the infringement upon free exercise is nonetheless substantial." Id.

[*7] Under RFRA, a "substantial burden" is imposed only when individuals are forced to choose between following the tenets of their religion and receiving a governmental benefit (Sherbert [v. Emp't Sec. Comm'n, 374 U.S. 398 (1963)]) or coerced to act contrary to their religious beliefs by the threat of civil or criminal sanctions ([Wisconsin v.] Yoder[, 406 U.S. 205 (1972)]. Any burden * * * short of that described by Sherbert and Yoder is not a "substantial burden" within the meaning of RFRA, and does not require the application of the compelling interest test set forth in those two cases.

Navajo Nation v. U.S. Forest Serv., 535 F.3d 1058, 1070 (9th Cir. 2008) (en banc); see also Snoqualmie Indian Tribe v. FERC, 545 F.3d 1207, 1213-1215 (9th Cir. 2008).

The section 152(c)(2) relationship classification does not condition petitioner's receipt of tax benefits on her forgoing her clan obligations to TD or force her to choose between following her clan obligations to TD and receiving tax benefits. Furthermore, the section 152(c)(2) relationship classification does not deny petitioner tax benefits because she fulfills her obligations to TD or force her to abandon her clan obligations to TD by threat of civil or economic sanctions. Regardless of petitioner's ineligibility for tax benefits such as the earned income credit, she is at liberty to fulfill her clan obligations to TD. Petitioner's argument for the burden on her religious rights is, instead, financial hardship and continuing Navajo child poverty. However, the Supreme Court has rejected the notion that a taxpayer's free exercise of her religious beliefs is somehow not fully realized

**[*8]** unless it is subsidized by tax benefits such as the earned income credit. <u>See,</u> <u>e.g.</u>, <u>Regan v. Taxation With Representation of Wash.</u>, 461 U.S. 540, 546 (1983). Constitutional protection of fundamental freedoms "'does not confer an entitlement to such funds as may be necessary to realize all the advantages of that freedom.'" <u>See, e.g.</u>, <u>Pixley v. Commissioner</u>, 123 T.C. 269, 274 (2004) (quoting <u>Harris v.</u> <u>McRae</u>, 448 U.S. 297, 318 (1980)). Consequently, although we do not disregard petitioner's assertions of financial hardship, these conditions, standing alone, do not establish that the section 152(c)(2) relationship classification substantially burdens her rights under the Free Exercise Clause.

Although RFRA requires respondent to demonstrate that the section 152(c)(2) relationship classification satisfies the compelling interest test, "the Government is not required to prove a compelling interest for its action or that its action involves the least restrictive means to achieve its purpose, unless the plaintiff first proves the government action substantially burdens his exercise of religion." <u>See</u> <u>Navajo</u> <u>Nation</u>, 535 F.3d at 1069. Hence, in the absence of petitioner's showing of a substantial burden on her rights under the Free Exercise Clause, the Government is not required to prove a compelling interest for its action or that its action involves the least restrictive means to achieve its purpose.

**[\*9]**  For the foregoing reasons, the section 152(c)(2) relationship classification does not violate petitioner's rights under the Free Exercise Clause of the First Amendment.

Equal Protection Clause

The Fourteenth Amendment to the Constitution provides that no State shall deny to any person the equal protection of the laws.  The Fifth Amendment imposes on the Federal Government the same standard required of State legislation by the Equal Protection Clause of the Fourteenth Amendment.  Schweiker v. Wilson, 450 U.S. 221, 226 n.6 (1981).

"Generally, statutory classifications are valid if they bear a rational relation to a legitimate governmental purpose."  Taxation With Representation, 461 U.S. at 547.  "'[A] classification neither involving fundamental rights nor proceeding along suspect lines * * * cannot run afoul of the Equal Protection Clause if there is a rational relationship between the disparity of treatment and some legitimate governmental purpose.'"  Armour v. City of Indianapolis, ___ U.S. ___, ___, 132 S. Ct. 2073, 2080 (2012) (quoting Heller v. Doe, 509 U.S. 312, 319-320 (1993)).

> The equal protection component of the Fifth Amendment prohibits only purposeful discrimination, Washington v. Davis, 426 U.S. 229, [243-244 (1976)] and when a facially neutral federal statute is challenged on equal protection grounds, it is incumbent upon the challenger to prove that Congress "selected or reaffirmed a particular

**[\*10]** course of action at least in part 'because of', not merely 'in spite of', its adverse effects upon an identifiable group." * * * [Citations omitted.]

Harris v. McRae, 448 U.S. 297, 323 n.26 (1980) (quoting Personnel Adm'r of Mass. v. Feeney, 442 U.S. 256, 279 (1979)). "'[T]he presumption of constitutionality can be overcome only by the most explicit demonstration that a classification is a hostile and oppressive discrimination against particular persons and classes.'" Taxation With Representation, 461 U.S. at 547 (quoting Madden v. Kentucky, 309 U.S. 83, 87-88 (1940)).

For the reasons discussed above, the section 152(c)(2) relationship classification does not violate petitioner's fundamental rights under the Free Exercise Clause of the First Amendment. Furthermore, the section 152(c)(2) relationship classification does not employ a suspect classification, such as race, that would constitute proceeding along suspect lines. See, e.g., San Antonio Indep. Sch. District v. Rodriguez, 411 U.S. 1, 61 (1973) (Stewart, J., concurring). However, according to petitioner, without conceding that low-income Navajo taxpayers and Navajo clan children must receive prior designation as protected classes for Fifth Amendment protection, petitioner asserts protected class status under the Navajo Treaty of 1868.

[*11] Petitioner offers nothing further in support of protected class status. Instead, petitioner appears to rely on the Navajo Treaty of 1868 to emphasize her financial need. Petitioner also relies on the Indian Child Welfare Act of 1978, Pub. L. No. 95-608, 92 Stat. 3069 (current version at 25 U.S.C. secs. 1901, 1902 (2006)), to emphasize the special needs of Indian children, which she asserts are needs largely based on continuing poverty.

Neither financial need nor poverty, standing alone, identifies a suspect class for purposes of equal protection analysis. See McRae, 448 U.S. at 323; Maher v. Roe, 432 U.S. 464, 470-471 (1977). There is no proof or even an indication that Congress selected or reaffirmed the section 152(c)(2) relationship classification because of or in spite of any adverse effects on petitioner or the Navajo or that the section 152(c)(2) relationship classification is a hostile and oppressive discrimination against her and the Navajo. For the foregoing reasons, the section 152(c)(2) relationship classification neither involves petitioner's fundamental right to the free exercise of her religion nor proceeds along suspect lines.

Because the section 152(c)(2) relationship classification neither involves petitioner's fundamental right to the free exercise of her religion nor proceeds along suspect lines, the section 152(c)(2) relationship classification is valid if it bears a rational relation to a legitimate governmental purpose. See Armour, ___

[*12] U.S. at ___, 132 S. Ct. at 2080; Taxation With Representation, 461 U.S. at 547.  As long as the classificatory scheme chosen by Congress rationally advances a reasonable and identifiable governmental objective, we must disregard the existence of other methods of allocation that we, as individuals, perhaps would have preferred.  See Wilson, 450 U.S. at 235.  The Government has especially broad latitude in creating classifications and distinctions in tax statutes, Armour, ___ U.S. at ___, 132 S. Ct. at 2080, and a broad public interest in maintaining a sound tax system, free of myriad exceptions flowing from a wide variety of religious beliefs.  Pixley v. Commissioner, 123 T.C. at 275.  A strong presumption of constitutionality is granted to legislation conferring monetary benefits, because Congress should have discretion in deciding how to expend necessarily limited resources.  Wilson, 450 U.S. at 238.

Respondent argues that the governmental purpose of the section 152(c)(2) relationship classification is to create a less burdensome and more administrable standard.  Petitioner does not deny that the Government has an appropriate interest in providing a benefit to distressed low-income taxpayers with dependents and an equally appropriate interest in limiting the definition of a qualifying child.  Hence, petitioner does not challenge the reasonableness of, or the legitimacy of, the governmental purpose.

[*13] Instead, petitioner argues that the section 152(c)(2) relationship classification does not bear a rational relationship to the governmental purpose because the binding familial ties and obligations of the Navajo are similar to the relationships set forth in section 152(c)(2), but are not so well known and were apparently overlooked in the drafting of the section 152(c)(2) relationships. Even if we assume arguendo the unique attributes of the Navajo culture and the similarity of Navajo clan relationships to the section 152(c)(2) relationships, neither unique cultural attributes nor similarity of clan relationships to the section 152(d)(2) relationships defeats Congress' broad latitude in creating classifications in tax statutes or overcomes the strong presumption of constitutionality granted to legislation conferring monetary benefits. As here, congressional action awarding monetary benefits such as the earned income credit inevitably involves the kind of line drawing that will leave some comparably needy person outside the favored circle. See Wilson, 450 U.S. at 238. Moreover, the section 152(c)(2) classificatory scheme chosen by Congress rationally advances a reasonable, identified governmental purpose because the classification scheme is objective and readily verifiable by taxpayers and the Internal Revenue Service.

**[\*14]** For the foregoing reasons, the section 152(c)(2) relationship classification does not violate petitioner's equal protection rights under the Fifth and Fourteen Amendments to the Constitution.

A Rule 155 computation will be required because respondent agrees that TD met the requirements for dependent qualifying relative, including the relationship test under section 152(d)(2)(H), for the year in issue. Petitioner is still entitled to a dependency exemption deduction for TD under section 151(a) and (c).

We have considered all of the arguments raised by the parties. Some are not supported by the stipulated record. To the extent not discussed above, they are irrelevant, moot, or without merit.

To reflect the foregoing,

<u>Decision will be entered</u>

<u>under Rule 155</u>.